IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 10 C 2755 ) ) Judge John A. Nordberg |
| SEVEN PALM INVESTMENTS, LLC, PETER P. VEUGELER, CARDIOVASCULAR SCIENCES, INC., and LAWRENCE H. HOOPER, JR., | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

      Before the Court is the SEC's motion to set disgorgement and civil penalty amounts as to defendants Peter P. Veugeler and Lawrence H. Hooper, Jr. (Dkt. # 58.) On January 9, 2012, and on March 9, 2011, this Court entered a consent judgment against Veugeler and Hooper permanently enjoining them from violating securities laws and imposing a bar on their involvement with penny stocks. (Dkt. # 33 and #43.) The consent judgments provide that the two men shall pay disgorgement of ill-gotten gains, prejudgment interest, and a civil penalty. (*Id.*) The judgments further provide that they are precluded from arguing that they did not violate securities laws as alleged in the complaint or challenging the validity of the consent judgments for purposes of this disgorgement motion.

      After the consent judgments were entered in early 2012, the SEC and defendants engaged in discovery regarding the disgorgement issues. Defendant Veugeler was represented by counsel (Andrew S. May). Defendant Hooper was not represented by counsel at this time. Previously, attorney Gregory Bartke appeared as his counsel, but on December 15, 2010, this Court revoked the pro hac vice appearance of attorney Bartke because he had been convicted the month before of criminal fraud charges. (Dkt. # 25, 27.) This court held status hearings every few months or so. *See* Dkt. # 46, 47, 48, 49, 51, 52, 54, 60. Each time, the SEC and counsel for Veugeler asked more time to conduct discovery regarding the disgorgement motion and to perhaps settle this last remaining aspect of this case. Neither Hooper nor any counsel representing him appeared at any of these hearings nor did Hooper, insofar as this Court is aware, participate in the discovery process. Eventually, the SEC filed the present motion, and this Court set a briefing schedule. At this point, counsel for Veugeler filed a motion to withdraw, citing irreconcilable differences. (Dkt. # 62.)

-1-

Counsel for Veugeler indicated that his client did not plan to retain new counsel. This Court granted the motion to withdraw and set a briefing schedule on the SEC's motion. Defendant Hooper, proceeding *pro se*, filed a document entitled "Request of Defendant Lawrence H. Hooper, Jr. For Consideration," in which he raised certain objections to the SEC's disgorgement motion. (Dkt. # 66.) Around the same time, defendant Veugeler, also proceeding *pro se*, filed a motion for extension of time to retain counsel. (Dkt. # 67.) He never noticed this motion up, however, and the SEC filed its reply brief. In reviewing these materials in preparation for a ruling, this Court issued an order granting Veugeler's motion for more time. (Dkt. #75.) Although we had already given him several months at that point, we gave him three more weeks to file an additional response brief or to have an attorney appear on his behalf. We received no response. Defendant Veugeler has thus filed no objections to the SEC's motion.

The SEC sets forth the facts in detail regarding these fraudulent schemes in its 20-page brief and also its complaint. It has also supplied the Court with a large binder of exhibits containing various financial and bank records. Because there is no dispute about the facts, we will not set forth a detailed summary of them here. The gist of the allegations is that Veugeler, through his company defendant Seven Palm Investments LLC, orchestrated an elaborate pump-and-dump scheme involving two separate penny stocks. Veugeler was central to the scheme and committed a number of fraudulent acts, as well as engaging in manipulative trades, resulting in his receipt of over $8 million in ill-gotten gains. Hooper was the CEO of defendant Cardiovascular Sciences, Inc. and looked to Veugeler to provide financing and ultimately worked with Veugeler to issue false and misleading press releases regarding Cardiovascular. The SEC is seeking a final judgment against Veugeler ordering him to pay: (1) disgorgement of $8,035,297; (2) prejudgment interest of $1,011,621; and (3) a civil penalty of $8,035,297, equivalent to his pecuniary gain. The SEC seeks a civil penalty against Hooper of $130,000.

Disgorgement is an equitable remedy designed to deprive the wrongdoer of unjust enrichment and to deter others as well. *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *SEC v. Black*, 2009 WL 1181480, * 2 (N.D. Ill. April 30, 2009). This Court has broad discretion in setting the amount of a disgorgement award, and the amount need not be exact. *SEC v. Alanar, Inc.*, 2008 WL 1994854, *4 (S.D. Ind. May 6, 2008); *Black*, 2009 WL 1181480 at *2. The SEC must show that the amount sought is a "reasonable approximation" of the profits the defendant gained from the wrongful conduct. *First City Fin. Corp.*, 890 F.2d at 1231. Any ambiguities in the SEC's calculation should be resolved against the defendants, and the SEC is not required to trace every dollar of the a defendant's gains. *Black*, 2009 WL 1181480 at *3.

The SEC is seeking disgorgement from Veugeler of $8,035,297 which is equal to the amount of his gains from (1) his receipt and purchase of Cardiovascular and Emergent stock during the time of the fraud; and (2) his sale of these shares and the resulting gains he received. (Dkt. # 58 at 13.) Specifically, Veugeler received almost 5 million shares as part of his "financing" arrangement with Cardiovascular and purchased an additional 2.6 million more. Benefitting from stock prices inflated by his fraud, Veugeler sold nearly 6.5 million shares realizing gains of approximately $4,616,827 from Cardiovascular trading. As for Emergent, Veugeler received almost 1.5 million shares as part of his "financing" arrangement and purchased an additional 293,545 shares, ultimately benefitting by later by selling nearly 1.7 million of these shares at inflated stock prices, thus realizing gains of approximately $3,418,470. Based on the above facts, as set forth in greater detail in the SEC's brief

and supporting exhibits, this Court finds that SEC has shown that $8,035,297 is a "reasonable approximation" of the profits Veugeler reaped from the receipt, purchase, and sale of Cardiovascular and Emergent shares.

The SEC also seeks from Veugeler prejudgment interest on the disgorgement. The SEC asserts that, to prevent fraudsters from profiting from their illegal activities, courts routinely require defendants to pay prejudgment interest on disgorgement. (Dkt. # 58 at 15, *citing SEC v. Lipson*, 129 F.Supp.2d 1148 (N.D. Ill. 2001), *aff'd*, 278 F.3d 656 (7th Cir. 2002) and other cases.) The SEC is seeking prejudgment interest in the amount of $1,011,621, which is based on an April 19, 2013 date based on a disgorgement amount of $8,035,297. These figures were calculated in accordance with the delinquent tax rate established by the IRS, 26 U.S.C. § 6621(a)(2), and were assessed on a quarterly basis, from the date of Veugeler's last receipt of ill-gotten gains. We find that such prejudgment interest is warranted. The SEC can provide updated interest calculations in a proposed final judgment order.

The SEC has not sought any disgorgement or prejudgment interest against Hooper.

The SEC is also seeking civil penalties against both men pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act, which set forth three tiers of penalties. Under the first tier, this Court may impose a penalty of up to $6,500 for each penalty or the gross amount of pecuniary gain. Under the second tier, this Court may impose a penalty of up to $65,000 for each violation or the gross amount of gain. Under the third tier, this Court may impose a penalty up to $130,000 for each violation or the gross amount of the gain.

Against Veugeler, the SEC seeks a third-tier penalty of $8,035,297 equal to the gross amount of gain. The basis is that his violations "involved fraud, deceit, manipulation, or other deliberate or reckless disregard of regulatory requirement" and his violations "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." (Dkt. # 58 at 16; 15 U.S.C. §§ 77t(d)(2)(C), 73u(d)(3)(B)(iii).) In imposing this penalty, this Court should consider "the seriousness of the violations, the defendant's intent, whether the violations were isolated or recurring, whether the defendant has admitted wrongdoing, the losses or risks of losses caused by the conduct, and any cooperation the defendant provided to enforcement authorities." *Alanar*, 2008 WL 1994854 at *7. Although these factors may be used, ultimately the decision is up to this Court's discretion. *SEC v. Moran*, 944 F.Supp. 286, 295 (S.D.N.Y. 1996). We find that the third-tier penalty being sought against Veugeler is justified based on the egregious nature of his actions over a two year period. He was the central player in these events and profited in a large way.

As for Hooper, the SEC is seeking a third-tier penalty of $130,000. The SEC asserts that his actions were egregious because he was involved in issuing false press release and shareholder letters containing misrepresentations about his company. The SEC explains, however, that Hooper's involvement was limited to Cardiovascular's offerings and were less recurring than Veugeler's; that he assisted the SEC throughout the litigation; that he did not receive any benefit or ill-gotten gains; and that his actions do not demonstrate a recurring pattern but appear to be a relatively isolated incident such that a $130,000 penalty would be sufficient.

Hooper, in his pro se response, makes a number of points. He first asserts that he did not plan and conspire to be misleading and had little experience in this type of matter and relied on Veugeler. He notes that he has done extensive charitable work and has participated in the boards of certain non-profit organizations. He argues that he has been penalized significantly already. He began working on this venture in June of 2003 and received little pay, supporting the company with all of his personal savings including most of his retirement nest egg, as well as exhausting a home equity line of credit. He has had a difficult time keeping his medical license and has only been able to find minimal part-time work as a physician. He has applied for Medicaid and free lunch programs for his five children. Hooper proposes that there be no penalty because he has already been penalized and suggests that this Court issue a recommendation that he complete an MBA program and that he will continue to cooperate with the SEC.

Considering all these factors, this Court imposes a third-tier penalty on Hooper in the amount of $25,000. This Court finds that this amount, rather than the $130,000, is a sufficient penalty in light of the financial situation and lesser involvement of Hooper in these matters. As the SEC has pointed out, his role was much different from Veugeler's, and he has assisted the SEC throughout this process. For these reasons, we conclude that a $25,000 third-tier penalty is appropriate.

In conclusion, the SEC's motion for disgorgement[#58] is granted. This Court imposes disgorgement on defendant Peter P. Veugeler in the amount of $8,035,297; prejudgment interest of $1,011,621; and a civil penalty in the amount of $8,035,297. The Court orders defendant Lawrence H. Hooper, Jr. to pay a civil penalty of $25,000. Within 3 weeks of this order, the SEC should submit to this Court a proposed form of a final judgment order.

**ENTER:**

_____
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** March 31, 2014